UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lakepointe Trading, LLC,                                     Civil No. 10-4447 (DWF/FLN)

          Plaintiff,

v.                                                                                  **MEMORANDUM**
                                                                                    **OPINION AND ORDER**
Export Enterprises, LLC,

          Defendant,

and

Export Enterprises, LLC,

          Counter Claimant,

v.

Lakepointe Trading, LLC,

          Counter Defendant.
_____

Bryan R. Freeman, Esq., and Wallace G. Hilke, Esq., Lindquist & Vennum, PLLP, counsel for Plaintiff and Counter Defendant.

Brian A. Wood, Esq., and Eric J. Steinhoff, Esq., Lind Jensen Sullivan & Peterson, PA; Gary R. Jones, Esq., and Trace G. Krueger, Esq., Baxter, Baker, Sidle, Conn & Jones, PA, counsel for Defendant and Counter Plaintiff.
_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Plaintiff Lakepointe Trading, LLC ("Lakepointe") on the breach of contract counterclaim brought

by Defendant Export Enterprises, LLC ("Export"). (Doc. No. 6.) For the reasons set forth below, Plaintiff's motion is denied.

## BACKGROUND

This case centers on a contract dispute between Lakepointe and Export. Lakepointe is a commodities broker that assists buyers and sellers in trading scrap metal in both international and domestic markets. (Compl. ¶ 2.)[1] Export exports scrap metal from the Baltimore, Maryland harbor by loading vessels for shipment of scrap metal oversees. (Answer and Counterclaim ("Answer") ¶¶ XXXII-XXXIV.) According to the Complaint, "Lakepointe typically brokers scrap metal by entering into 'mirror' contracts with buyers and sellers in which a seller agrees to sell a specific quantity of metal to Lakepointe under certain payment and delivery terms and Lakepointe agrees to sell the identical quantity to a buyer under the same terms." (Compl. ¶ 5.)

In Spring 2010, Lakepointe allegedly arranged for the sale of approximately 32,000 metric tons of scrap steel by Export to Cargill International Trading, PTE, Ltd. ("Cargill"). (Compl. ¶ 8.) The scrap metal was destined for Turkey. (Answer ¶ XXXVI.) Lakepointe's Complaint asserts that the parties entered into two mirror contracts—one by which Lakepointe was the buyer and Export was the seller, and another whereby Lakepointe was the seller and Cargill was the buyer. (Compl. ¶ 8.) Lakepointe and Export entered into the contract on April 5, 2010. (Answer ¶ XXXVI.)

---

[1]   In order to provide a complete factual background to this motion, the Court has culled facts from both Plaintiff's Complaint and the Defendant's Answer/Counterclaim. However, the Court still views the facts in the light most favorable to Defendant, the non-moving party.

The contract between Lakepointe and Export required that Lakepointe would obtain a Letter of Credit issued from Cargill for $14,598,500—the "full amount of the deal"—by April 9, 2010.  (*Id.* ¶¶ XXXVII-XXXIX.)  Apparently, Lakepointe was unable to comply with the provision of the contract regarding the Letter of Credit.  (*Id.* ¶ XLI.)  Export alleges that "they suggested that the Lakepointe Contract [between Export and Lakepointe] be declared null and void and that it be replaced by a contract between [Export] and Cargill."  (*Id.*)  The Answer/Counterclaim further asserts that "[s]ince it could not have two contracts for one cargo, [Export] agreed to void the Lakepointe Contract and enter into a new contract with Cargill."  (*Id.* ¶ XLII.)  Lakepointe asserts that under the restructured agreement, Cargill would purchase the scrap metal directly from Export. (Compl. ¶ 13.)  Further, Lakepointe asserts that under this restructured deal, Export would still pay a brokerage commission to Lakepointe.  (*Id.* ¶¶ 13-14.)  Export denies that this agreement occurred.

Lakepointe sued Export, alleging that Export breached its agreement to pay Lakepointe a brokerage commission on the scrap metal that Export sold to Cargill.  (Compl. ¶ 26.)  Export counterclaimed, asserting that Lakepointe breached its agreement with Export by failing to obtain the required letter of credit, failing to comply with the terms of the first contract, and failing to compete the transaction as per the terms of the contract.  (Answer ¶ XLVIII.)

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts

3

in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Here, Lakepointe asserts that Export's breach-of-contract counterclaim fails because there can be no breach of a rescinded contract. In support, Lakepointe points to the language in Export's answer whereby Export asserts that it "agreed to void the Lakepointe Contract." (Answer ¶ XLI-XLII.) Lakepointe argues that because Export

admits that the contract was voided, Export has no rights under the non-existent contract on which Export bases its counterclaim.

The Court disagrees.  Questions exist as to the intent of the parties when they terminated the April 5, 2010 Contract.  It is not clear to the Court what the parties intended by the use of the word "void" (and the words "null and void" in subsequent e-mails that were provided with this motion).  Although the parties seem to agree that the contract was terminated, the Court cannot conclusively find, at this stage of the proceedings, that the parties intended to abandon all of their rights to the April 5, 2010 Contract.  Absent discovery, the Court cannot determine that the parties mutually agreed to rescind the contract.  Lakepointe's Motion to Dismiss is denied.

Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiff Lakepointe Trading, LLC's Motion to Dismiss (Doc. No. [6]) is **DENIED.**

Dated:  April 11, 2011              s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge